UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MEDICAL MUTUAL INSURANCE COMPANY OF MAINE, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Docket no. 2:16-cv-462-GZS<br>)<br>) |
| DOUGLAS BURKA, | )<br>)<br>) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S MOTION TO DEFER CONSIDERATION OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court are Defendant's Motion for Partial Summary Judgment (ECF No. 18) and Plaintiff's Motion to Defer Consideration of Motion for Partial Summary Judgment (ECF No. 32). For the reasons explained below, the Court DENIES both Plaintiff's Motion to Defer and Defendant's Motion for Partial Summary Judgment. However, the Court GRANTS partial summary judgment in Plaintiff's favor on the issue of whether Plaintiff currently has a duty to defend the relevant suits in Maryland and Maine.

**I.   LEGAL STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (quotation marks and punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera-Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation."). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment for the moving party." In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993).

Federal Rule of Civil Procedure 56(d) provides, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to

a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." However, "Rule 56(d) relief is not to be granted as a matter of course, and a court is entitled to refuse a Rule 56(d) motion if it concludes that the [movant] is unlikely to garner useful evidence from supplemental discovery." United States ex rel. Booker v. Pfizer, Inc., 847 F.3d 52, 61 (1st Cir. 2017) (alteration in original) (quotation marks omitted).

Finally, a court may enter summary judgment in favor of the *nonmoving party* pursuant to Federal Rule of Civil Procedure 56(f)(1) if that party is entitled to judgment as a matter of law and "the losing party [is] on notice that she had to come forward with all of her evidence." Rogers v. Mgmt. Tech., Inc., 123 F.3d 34, 38 (1st Cir. 1997) (quotation marks omitted).

## II. FACTUAL BACKGROUND

*The Professional Liability Policy*

Plaintiff Medical Mutual Insurance Company of Maine, Inc. ("MMIC") issued a professional liability policy ("the Policy") for which the Named Insured is SMHC Physician Services, P.A. ("SMHC").[1] The Policy includes a "Slot Policy Endorsement," which covers "all individual physicians listed on the SCHEDULE OF SLOTS ENDORSEMENT and working as employees or contractors of the NAMED INSURED." (Def.'s Statement of Material Facts, Ex. A (ECF No. 22-1) ("Policy"), Page ID # 255.) The Endorsement specifies that "each such individual physician position shall be termed a 'slot'" and that "[e]ach individual physician while occupying

---

[1] Southern Maine Health Care is the sole shareholder of SMHC and has operated under the assumed name of Southern Maine Medical Center. Southern Maine Health Care and SMHC are part of the MaineHealth network of healthcare providers.

3

a 'slot' shall be an INSURED under the provisions of the Policy." (Policy, Page ID # 255.) The Endorsement further provides the following coverage agreement:

> Coverage afforded to insured physicians under this Policy is limited to CLAIMS arising from MEDICAL INCIDENTS or from NON-PATIENT INCIDENTS which result from their PROFESSIONAL SERVICES rendered within the scope of their duties as a physician employee or contractor of the NAMED INSURED . . . .

(Id.) Defendant Dr. Douglas Burka was listed by name on the schedule of Slot Coverage with an individual retroactive date of August 13, 2012. He was deleted from the Schedule of Covered Physicians by an endorsement dated August 25, 2015.

> The general coverage agreement of the Policy provides,
>
> We agree to pay on your behalf DAMAGES and DEFENSE COSTS which you become legally obligated to pay due to any CLAIM made against you as a result of a MEDICAL INCIDENT as defined in this Policy . . . provided that:
>
>> 1. the MEDICAL incident results from your PROFESSIONAL SERVICES . . . and the MEDICAL INCIDENT occurs on or after the Retroactive Date noted on the DECLARATIONS PAGE for this Policy;
>
> [and]
>
> We agree to pay on your behalf DAMAGES and DEFENSE COSTS which you become legally obligated to pay due to any CLAIM made against you as a result of a NON-PATIENT INCIDENT as defined in this Policy . . . provided that:
>
>> 1. the NON-PATIENT INCIDENT results from your PROFESSIONAL SERVICES . . . and the NON-PATIENT INCIDENT occurs on or after the Retroactive Date noted on the DECLARATIONS PAGE for this Policy . . . .

(Id., Page ID #s 271, 272.) The Policy provides the relevant definitions as follows:

> A. "CLAIM" means an oral or written demand against an INSURED for DAMAGES, and includes civil lawsuits . . . .
>
> B. "DAMAGES" means monetary sums not exceeding the Limit of Liability for which you are legally obligated to pay (including pre-judgment interest) to compensate for injury or death as a result of a MEDICAL INCIDENT [or] a

NON-PATIENT INCIDENT . . . DAMAGES do not include restitution, non-monetary relief or the cost of complying with non-monetary relief, uninsurable matters, fines, penalties, taxes or punitive, exemplary or multiplied damages (except when expressly required by law).

[. . .]

E. "INSURED" means any individual or organization listed as the NAMED INSURED or as an Additional INSURED on the DECLARATIONS PAGE or on an Endorsement to this Policy. Other individuals or organization might also be INSUREDS if they qualify as such under the Policy's Section III. INSUREDS.[2]

F. "MEDICAL INCIDENT" means any act, failure to act, or omission in the furnishing of PROFESSIONAL SERVICES to a PATIENT by any INSURED . . . .

[. . .]

H. "NON-PATIENT INCIDENT" means an occurrence other than a MEDICAL INCIDENT which arises from PROFESSIONAL SERVICES provided by an INSURED and which results in a CLAIM for DAMAGES . . . .

---

[2] Section III of the Policy, "INSUREDS," provides,

Each of the following is an INSURED to the extent set forth below:

A. the NAMED INSURED;

B. the medical corporation, association or partnership of which the NAMED INSURED is a physician member or physician employee, but only with respect to the acts or omissions of the NAMED INSURED in the provision of PROFESSIONAL SERVICES. A medical corporation, association or partnership which maintains in force a separate professional liability policy, either with the Company or another insurer, is not an INSURED under this Policy;

C. employees of the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered within their scope of duties as such; however, with respect to the NAMED INSURED'S employed Physicians, Nurse Anesthetists, Nurse Midwives, Nurse Practitioners and Physician Assistants, they are not INSUREDS under this Policy unless their names and their specific premium charges are shown on the DECLARATIONS PAGE; and,

D. any physician or surgeon temporarily employed by the NAMED INSURED as a relief or substitute physician or surgeon, provided that the NAMED INSURED has obtained approval from the Company prior to the employment of the relief or substitute physician or surgeon.

(Def.'s Statement of Material Facts, Ex. A (ECF. No. 22-1), Page ID #s 272-73.) The Court does not rely on this provision in its analysis of whether Dr. Burka is an "insured" under the Policy.

> I. "PATIENT" means any person for whom any INSURED under this Policy directly performs PROFESSIONAL SERVICES in the form of healthcare treatment of that person . . . .
>
> J. "PROFESSIONAL SERVICES" means an INSURED'S . . .
>
>> 3. obligation to maintain PATIENT confidentiality in the handling of PATIENT records in the direct course of providing PROFESSIONAL SERVICES to that PATIENT . . . .

(Id., Page ID #s 279-80.)

*The Maryland and Maine Lawsuits against Dr. Burka*

On February 26, 2016, Allison Cayne Burka, Dr. Burka's now ex-wife, and her parents Howard and Caroline Cayne, filed a Complaint against Dr. Burka and his father, Dr. Steven A. Burka, in Maryland state court. The Complaint alleges, in relevant part, that both during their marriage and after their separation in or about April 2015, Douglas "engaged in a campaign to access Allison's medical records to learn about her mental and gynecological health and other confidential medical information." (Def.'s Statement of Material Facts, Ex. B (ECF No. 22-2) ("Maryland Compl.") ¶ 14.) Specifically, the Complaint alleges that Douglas conspired with his father in or about May 2015 to improperly obtain Allison's medical records kept in Washington, D.C.-area medical facilities in order to harass and embarrass her and to gain advantage in the pending divorce litigation. (Maryland Compl. ¶ 15.) The Complaint recites that "on at least one occasion, after Allison left him, Douglas Burka also used his privileges at Southern Maine Medical Center to access Allison's medical records." (Id. ¶ 14.) However, the Complaint states that this incident, along with others prior to May 2015, is "the subject of a separate lawsuit in Cumberland County Superior Court in Maine," id., and the specific counts do not further reference activities in Maine or seek relief pursuant to Maine law.

6

On May 9, 2016, Allison filed an Amended Complaint in Maine state court alleging, in relevant part, that Douglas inappropriately accessed her medical records "at Southern Maine Healthcare" around April 2015, at a time during which he is alleged to have been living in the Washington, D.C., area, but "still employed in Maine and still a member of the medical staff at Southern Maine Healthcare." (Def.'s Statement of Material Facts, Ex. C (ECF No. 22-3) ("Maine Compl.") ¶¶ 15-16.) At some point, Count I of the Complaint (Invasion of Privacy) was dismissed by the state court, and Count III (Intentional Infliction of Emotional Distress) was eventually dismissed by stipulation of the parties, leaving only Count II (Unlawful Disclosure of Confidential Health Care Information), which seeks injunctive relief and costs pursuant to 22 M.R.S.A. § 1711-C, Confidentiality of Health Care Information.[3]

*The Matter Before this Court*

On November 17, 2016, MMIC filed an Amended Complaint for Declaratory Judgment against Dr. Burka in the District of Maine, seeking a declaration that MMIC does not have a duty to defend Dr. Burka in the Maryland and Maine lawsuits. On January 17, 2017, Dr. Burka moved for partial summary judgment, seeking a declaration that MMIC *does* have a duty to defend the two lawsuits.[4] On February 7, 2017, MMIC moved for this Court to defer consideration of Dr. Burka's motion for partial summary judgment until MMIC can conduct discovery on the issue of

---

[3] In addition to the Complaints, the parties have filed with the court an order dismissing Count I and a stipulation dismissing Count III in the state court proceedings. (ECF Nos. 30-4, 30-5.) The Court notes that the filed order dismissing Count I appears to predate the Amended Complaint, which includes an invasion of privacy claim. However, the parties agree that Count II is the only remaining claim in the Maine action and, in any event, the Court takes judicial notice of the state court's dismissals.

[4] Dr. Burka filed a counterclaim seeking "a declaration that he is owed a defense in the underlying actions, an award of his fees and costs incurred in defending those actions, an award of his attorneys' fees incurred in defending this action, for such consequential damages to which he may be entitled, and an award of his costs." (Answer with Countercl. (ECF No. 7), Page ID # 31.) On March 2, 2017, the parties stipulated to the dismissal without prejudice of Dr. Burka's claim for consequential damages. (ECF No. 39.)

whether Dr. Burka was an insured within the meaning of the Policy or, in the alternative, to grant summary judgment *in MMIC's favor*.[5] Upon Defendant's unopposed request, oral argument was held before the Court on April 27, 2017.

### III. DISCUSSION[6]

A. Plaintiff's Motion to Defer Consideration

MMIC contends that additional discovery is needed to determine whether Dr. Burka was an "insured" within the meaning of the Policy. Although the Court appreciates the company's argument that discovery on this threshold issue may be necessary in some duty to defend cases, this is not such a case. The plain language of the Policy provides that "[e]ach individual physician while occupying a 'slot' shall be an INSURED under the provisions of the Policy." (Policy, Page ID # 255.) MMIC does not contest that Dr. Burka was an individual physician occupying a "slot" during a portion of the period involved in the Maryland and Maine suits. The company nevertheless argues that additional discovery is necessary to determine if, notwithstanding the plain Policy language, Dr. Burka was acting outside the scope of Policy coverage when he allegedly accessed his ex-wife's medical records. But this issue is typically addressed, as explained below, by comparing a policy with the relevant complaint to determine whether the allegations potentially fall within policy coverage. Because additional discovery is unnecessary

---

[5] Plaintiff's request for summary judgment in its Motion to Defer put Defendant on notice that summary judgment could be entered in favor of Plaintiff, the nonmoving party. See Fed. R. Civ. P. 56(f)(1).

[6] The parties agree that Maine law controls the substantive legal questions before this Court.

to determining this question and would therefore be "fruitless," the Court DENIES Plaintiff's Motion to Defer.[7] See Pfizer, Inc., 847 F.3d at 62.

B.   Defendant's Motion for Partial Summary Judgment

"Whether an insurer owes a duty to defend is a question of law . . . ." City of South Portland et al. v. Me. Mun. Ass'n Prop. & Cas. Pool, Cum-16-105, 2017 WL 1149607, at *2 (Me. Mar. 28, 2017) (footnote omitted). The procedure for determining whether a duty to defend exists, and the supporting rationale, is well established:

> To determine whether an insurer has a duty to defend, a court considers and compares two documents: the insurance policy and the underlying complaint against the insured. An insurer has a duty to defend an insured when the complaint, read broadly in conjunction with the policy, reveals the existence of any legal or factual basis that could *potentially be developed at trial and result in an award of damages covered by the terms of the policy*. . . . [The Maine Supreme Court has] explained the comparison test and its low threshold for triggering an insurer's duty to defend as a test and a threshold designed to discourage mini-trials on the issue of the duty to defend.

Harlor v. Amica Mut. Ins. Co., 150 A.3d 793, 797-98 (Me. 2016) (emphasis added) (footnote, citations, and quotation marks omitted).

A court must "appl[y] a broad construction of the underlying complaint in favor of the insured and a strict construction of policy exclusions and ambiguities against the insurer." Barnie's Bar & Grill, Inc. v. U.S. Liab. Ins. Co., 152 A.3d 613, 615 (Me. 2016). However, a court should not "conjure the duty to defend from speculation or supposition," id., or "speculate about causes of action that were not stated," York Golf and Tennis Club v. Tudor Ins. Co., 845 A.2d 1173, 1175 (Me. 2004). Similarly, "[t]he facts alleged in the complaint need not make out a claim that specifically and unequivocally falls within the coverage," Harlor, 150 A.3d at 797 (quotation

---

[7] Because the Court denies Plaintiff's Motion to Defer on its merits, it does not opine on Defendant's argument that Plaintiff waived the ability to file a Rule 56(d) motion. (See Def.'s Opp'n to Pl.'s Rule 56(d) Mot. (ECF No. 35), Page ID # 485.)

9

marks omitted), but a court should not "read allegations into the complaint" to find a legal or factual basis for coverage that does not otherwise exist, Barnie's Bar & Grill, Inc., 152 A.3d at 616. The duty to defend inquiry thus requires a court to walk a fine line between fairly discerning a potential for coverage and reading too much into a complaint. In this matter, however, the inquiry is not unduly complex.

Regarding the Maryland suit, the Court can discern no potential for coverage under the Policy. As a preliminary matter, it is clear from the face of the Complaint that the claims in the Maryland suit are not based on the accessing of medical records in Maine. (See Maryland Compl. ¶ 14 (stating that the accessing of medical records in Maine is "the subject of a separate lawsuit in Cumberland County Superior Court in Maine").) The Court is therefore left to consider the allegations concerning the accessing of Allison's medical records at Washington, D.C.-area medical facilities. To trigger the duty to defend under the Policy, claims for "medical incidents" or "non-patient incidents" must arise from the furnishing of "professional services" that are "rendered within the scope of [a physician occupying a slot's] duties as a physician employee or contractor of" SMHC. ((Policy, Page ID # 255); see also Def.'s Mot. for Partial Summ. J. (ECF No. 18), Page ID # 102 ("The only articulated barrier to a defense being required for any lawsuit against an insured is whether the claim arose from the rendering of professional services.")) The Court agrees with Defendant that there is some ambiguity in the definition of "professional services" in the Policy. However, the Court concludes there is no potential that facts will be developed at trial that would connect Dr. Burka's provision of "professional services" under the Policy, however that term is defined, with the alleged conspiracy to access Allison's medical records at Washington, D.C.-area medical facilities seemingly unaffiliated with SMHC at a time when Allison was no longer living in Maine. The Court's conclusion is supported by the allegation

in the pleadings that "Steven Burka used *his credentials within JHHS* [Johns Hopkins Health System] *and his access to JHHS systems* to improperly access and obtain Allison's medical records." (Maryland Compl. ¶ 15) (emphasis added). This allegation suggests, if anything, the potential that *Steven Burka's* actions were related to his professional services, but, of course, Steven Burka was not an insured under the Policy. For these reasons, the claims regarding the accessing of Allison's medical records at the Washington, D.C.-area medical facilities simply do not "reveal[] the existence of any legal or factual basis that could potentially be developed at trial and result in an award of damages covered by the terms of the policy." Harlor, 150 A.3d at 797. The Court therefore concludes that MMIC has no duty to defend the Maryland suit.[8]

The Maine suit presents a different problem for Dr. Burka. The Policy creates a duty to defend a "claim," which is defined as "an oral or written demand against an INSURED for DAMAGES." (Policy, Page ID # 279.) "Damages" is further defined to exclude "restitution, non-monetary relief or the cost of complying with non-monetary relief, uninsurable matters, fines, penalties, taxes or punitive, exemplary or multiplied damages (except when expressly required by law)." (Id.) The sole remaining claim in the Maine suit seeks injunctive relief and costs. On its face, then, the claim does not fall within Policy coverage. The Maine Supreme Court has held that, in determining whether a claim involves damages for purposes of the duty to defend, a court may consider whether a court *could award damages* on the claim, even in the absence of a request for damages. See York Golf and Tennis Club, 845 A.2d at 1176 (stating that, even when a complaint does not request monetary damages, a court "must look to the allegations in the underlying complaint to determine whether they would support an award of damages even though

---

[8] The Court does not understand Defendant to seriously contend that the allegations in the Maryland suit concerning Howard and Caroline Cayne, Allison's co-plaintiffs and parents, are sufficient to trigger a duty to defend. Among other issues, these allegations concern events occurring after Dr. Burka was removed from the Policy.

11

damages were not requested"). However, the remaining claim in the Maine suit was brought under 22 M.R.S.A. § 1711-C(13)(B), which does not provide for damages.[9]

Dr. Burka contends that MMIC still has a duty to defend even if the remaining claim in the Maine suit does not appear to fall within Policy coverage because the involuntarily dismissed claim sought damages and that claim could be reinstated on appeal. The Court notes the case law in other circuits suggesting that the duty to defend "continues until all arguably covered claims ha[ve] been completely extinguished—in other words, when no further rights to appeal those arguably covered claims exist." Wells' Dairy, Inc. v. Travelers Indem. Co. of Ill., 336 F. Supp. 2d 906, 911

---

[9] The statute provides,

> **13. Enforcement.** This section may be enforced within 2 years of the date a disclosure in violation of this section was or should reasonably have been discovered.
>
> **A.** When the Attorney General has reason to believe that a person has intentionally violated a provision of this section, the Attorney General may bring an action to enjoin unlawful disclosure of health care information.
>
> **B.** An individual who is aggrieved by conduct in violation of this section may bring a civil action against a person who has intentionally unlawfully disclosed health care information in the Superior Court in the county in which the individual resides or the disclosure occurred. The action may seek to enjoin unlawful disclosure and may seek costs and a forfeiture or penalty under paragraph C. An applicant for injunctive relief under this paragraph may not be required to give security as a condition of the issuance of the injunction.
>
> **C.** A person who intentionally violates this section is subject to a civil penalty not to exceed $5,000, payable to the State, plus costs. If a court finds that intentional violations of this section have occurred after due notice of the violating conduct with sufficient frequency to constitute a general business practice, the person is subject to a civil penalty not to exceed $10,000 for health care practitioners and $50,000 for health care facilities, payable to the State. A civil penalty under this subsection is recoverable in a civil action.
>
> **D.** Nothing in this section may be construed to prohibit a person aggrieved by conduct in violation of this section from pursuing all available common law remedies, including but not limited to an action based on negligence.

22 M.R.S.A. § 1711-C(13). The Court reads this language to suggest that injunctive relief, fines, or penalties are the only forms of relief provided by Section 1711-C. This conclusion is bolstered by the fact that the statute explicitly states that it does not foreclose an aggrieved party from separately pursuing common law remedies, such as a negligence suit, that would allow the recovery of damages. See id. § 1711-C(13)(D). Defendant does not contend that a request for court costs is alone sufficient to trigger coverage, and the Court is not inclined to rest a duty to defend upon such a thin reed.

(N.D. Iowa 2004) (quotation marks omitted). However, the Court is more convinced by authority in this circuit suggesting otherwise. Although the Maine Supreme Court has not squarely addressed this issue in recent years, the First Circuit has held that there is no ongoing duty to defend where a court has disposed of the claims that potentially fell within policy coverage. See Conway Chevrolet-Buick, Inc. v. Travelers Indem. Co., 136 F.3d 210, 214-15 (1st Cir. 1998) ("The court's grant of partial summary judgment, however, left no basis for coverage. . . . As the complaint asserted no live counts outside the exclusion, Travelers did not breach its contractual duty to defend when it withdrew.") Conway involved a suit in Massachusetts, but the holding regarding the basis for coverage was not at all dependent on any particulars of Massachusetts law, and Massachusetts and Maine generally take a similar approach in duty to defend cases. See Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530 (Mass. 2003) (explaining that Massachusetts determines if there is a duty to defend by comparing the complaint with the policy). The Court, therefore, concludes that, because there is no "live" claim for damages in the Maine suit, MMIC has no ongoing duty to defend that suit.[10]

The Court's comparison of the Policy with the Complaints reveals no ongoing potential for an award of damages covered by the Policy. Therefore, the Court concludes that MMIC currently has no duty to defend either suit. For this reason, the Court DENIES Defendant's Motion for Partial Summary Judgment. However, the Court concludes that, on the current record, Plaintiff is entitled to judgment as a matter of law to the extent it sought a declaration that MMIC has no duty to defend the Maryland suit and no duty to defend the Maine suit given the sole remaining claim.

---

[10] To the extent Defendant is seeking his defense costs for the period before the claims seeking damages in the Maine suit were dismissed, the Court is not prepared, on this record and without a more complete understanding of the state court proceedings, to determine whether there was a duty to defend and at what exact point the duty, if it existed, was extinguished. See supra n.3.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Defer, DENIES Defendant's Motion for Partial Summary Judgment, but GRANTS partial summary judgment in favor of Plaintiff with a declaration that MMIC does not have a duty to defend the Maryland suit and does not have a duty to defend the Maine suit to the extent it only states a claim under 22 M.R.S.A. § 1711-C(13)(B). This matter remains pending as to whether MMIC had a duty to defend the Maine suit before the dismissal of the counts seeking damages.

SO ORDERED.

                                                  /s/ George Z. Singal
                                                  United States District Judge

Dated this 3rd day of May, 2017.